Rockingham, }
  June, 1896. }

### SANBORN, *Assignee,* v. WILDER *& a.*

68  471
69  474

An assignee in insolvency may avoid a fraudulent sale of the debtor's interest in a firm to his copartner, although made more than three months prior to the insolvency proceeding, and may recover the debtor's interest in the partnership upon a final settlement of its affairs.

When the assets of such debtor consist almost entirely of claims against an insolvent partnership, evidence as to the assets and liabilities of both parties is material upon the question whether the property sought to be recovered is necessary for the payment of debts.

In such case, an objection to the respective insolvency schedules as a mode of proof will be treated as waived, if not specifically stated.

BILL IN EQUITY, by the plaintiff, as assignee in insolvency of the estate of William W. Wilder, against William W. and David F. Wilder, alleging that a sale made by William of his interest in the partnership property of Wilder & Son to his copartner, David, was fraudulent as to creditors, and praying that David be required to account. Facts found by a referee.

Proceedings in insolvency against William were commenced May 18, 1894, and the plaintiff was appointed assignee June 16, 1894. In 1887, William gave his son David a half interest in a country store, and formed a partnership with him, under the firm name of Wilder & Son. August 5, 1893, William sold his interest in the firm to David, but the sale was not made

in good faith. There was no apparent change in the possession or control of the visible property of the concern. The business was conducted after the sale in the same name, in substantially the same manner, and by the same persons as before. Debts to the amount of more than $16,000 were proved against William's estate. They all accrued after August 5, 1893, and consisted of his indorsements of the notes of Bartlett & Peaslee for their accommodation. His assets, consisting almost entirely of the notes of that firm, were less than $5,000. Bartlett & Peaslee were also in insolvency, and debts, including their notes to William, to the amount of $35,000 were proved against them. Their assets were about $6,700. Subject to the defendants' exception, the referee received in evidence the schedule of assets and of creditors filed in the probate court by William, and also Bartlett & Peaslee's schedule of assets.

*Wiggin & Fernald* and *Louis G. Hoyt,* for the plaintiff.

*Eastman, Young & O'Neill,* for the defendants.

PIKE, J. All the estate of an insolvent debtor, not exempt from attachment, including property sold or transferred by him if the sale or transfer is fraudulent as to creditors, vests in the assignee. P. S., c. 201, ss. 6, 26.

The question whether the sale, as a matter of law, was void as against the creditors of William because there was no apparent change in the possession of the visible property of the firm (*Coburn* v. *Pickering,* 3 N. H. 415) need not be considered, since it is found that the sale was not made in good faith, or, in other words, was fraudulent in fact.

In regard to the defendants' claim, that at the time of the sale William had no interest in the firm but, on the contrary, was largely indebted to it, it is sufficient to say that though some evidence on the subject is reported, the fact itself is not found. The plaintiff seeks to recover William's interest in the property of the firm after a final settlement of its affairs. What this interest, if any, may be, is a question to be determined on an accounting.

If, notwithstanding the proceedings in insolvency, William's assets in the hands of the assignee were sufficient to pay his debts in full, there was no occasion for this suit. It was therefore material for the plaintiff to show that for the payment of the debts the property fraudulently conveyed was necessary. All the assets of William consisted of Bartlett & Peaslee's direct indebtedness to him; and all his liabilities, of debts upon which they were the principal debtors. If they could pay their debts in full, or even eighty per cent of them, a balance, after

paying William's debts in full, would be left in the plaintiff's hands. These facts, with the further fact that Bartlett & Peaslee's assets were insufficient to pay more than twenty per cent of their debts, appeared in the schedules received in evidence. The defendants excepted to their reception, not on the technical ground that the schedules were incompetent evidence of those facts, but because (as stated in their brief) the facts themselves have " no tendency to show that David had acted dishonestly, or that William's creditors have been injured by the sale of the partnership property to David." If the defendants had excepted specifically on the ground that the schedules were not competent evidence of the facts therein stated, the objection, if tenable, might readily have been obviated. *Heath* v. *Heath*, 58 N. H. 292; *Haines* v. *Insurance Co.*, 59 N. H. 199.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.