Hillsborough
No. 7280

STATE OF NEW HAMPSHIRE

v.

DANNY SLADE

July 30, 1976

*Warren B. Rudman,* attorney general, and *Gregory H. Smith,* assistant attorney general *(Mr. Smith* orally), for the State.

*Smith, Welts & Currier* and *Richard E. Boyer (Mr. Boyer* orally) for the defendant.

GRIMES, J.    The issues involved in this transfer are whether the court erred in denying the defendant's motion to suppress certain evidence and whether the court committed error in its instruction to the jury. Defendant was charged with aggravated assault, in violation of RSA 631:2, and a verdict of guilty was returned by a jury. All questions of law were reserved and transfered by *King,* J.

On the evening of April 23, 1974, the defendant had an argument in his mobile home with his wife, from whom he was separated. The trailer was located in a mobile home park in Hudson. The wife left the trailer and telephoned the Hudson police. Two police officers arrived at the defendant's trailer, identified themselves, and asked to speak to the defendant. Defendant asked to be left alone and went inside the trailer. Thereafter, the trailer lights went out and a gunshot was fired. The two officers testified that they felt debris strike their arms, face and hair. Other police officers arrived at the scene in response to a call and surrounded the trailer. After approximately thirty to forty-five minutes, the stereo in defendant's home was turned to high volume and the defendant broke the rear window of the trailer and attempted to escape into the woods, while carrying a shotgun. When confronted by the police, the defendant climbed back into the trailer. At that time, one of the officers fired a warning shot. About ten minutes later, the defendant came out of the front of his trailer and surrendered. He was arrested, and taken to the side of the trailer where he was frisked, handcuffed, and given the *Miranda* warnings.

After the arrest, Captain Seddon of the Hudson police entered defendant's trailer. Upon entering, he observed numerous handguns and rifles, and after searching the premises discovered a bullet hole and powder burns on a curtain, a bullet hole in the window frame, and a shell casing lying below that frame. The captain seized this evidence and at the same time took photographs of the inside of the trailer. At trial the defendant moved to suppress this evidence, as fruits of an illegal search, but only one of the photographs was excluded.

Since this case involves a search of defendant's home without a warrant, the burden of proof rests upon the prosecution to show that the search was justified. *State v. Dearborn,* 114 N.H. 457, 460, 322 A.2d 924, 926 (1974); *Coolidge v. New Hampshire,* 403 U.S. 433, 454-55 (1971). No amount of probable cause can, without more, justify a search or seizure without a warrant. *Coolidge v. New Hampshire supra.* Exigent circumstances however may with proba-

ble cause justify a warrantless search. No exigent circumstances existed which would permit a search of the home other than for a possible victim. The record shows that there were several police officers at the scene so there was no chance that the trailer would be moved before a warrant could be obtained. Nor was there any reasonable chance that anyone would enter to destroy or remove any evidence.

We cannot say, however, that the trial court could not find that the officer had a reasonable belief that there might be a victim in the trailer in need of immediate assistance. The initial intrusion without a warrant could therefore have been found to have been justified. Once inside the home, the scope and intensity of the authorized search was limited to that which was reasonable to discover the possible victim. Anything beyond that was unjustified. If, however, while confining himself to a reasonable search for a victim, the officer came upon evidence in "plain view," he might in some circumstances seize it. *Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *Harris v. United States,* 390 U.S. 234 (1968).

There are, however, certain limitations on the "plain view" doctrine. "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused . . . [T]he extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire,* 403 U.S. at 466; Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047 (1975).

It cannot be said that the curtain, the bullet hole, the shell casing, and the photographs were found inadvertently while looking for a victim. In his testimony, Captain Seddon described the search he made of the trailer. This testimony makes it clear that the search and seizure of the curtain, the bullet hole, the shell casing, and the photographs were not the result of "falling in the plain view of an officer who has a right to be in the position to have that view" *(Harris v. United States, supra* at 236; *Ker v. California,* 374 U.S. 23, 42-43 (1963)), but rather was the product of an intentional search after the search for a victim had ended.

*Coolidge v. New Hampshire,* 403 U.S. 443 (1971). Not falling under any exception to the fourth amendment warrant requirement, it was error for the trial court to deny the defendant's motion to suppress the curtain, the bullet hole, the shell casing, the photographs, and the testimony about them. *See Root v. Gauper,* 438 F.2d 361, 364 (8th Cir. 1971). The guns are another matter. They came into view while the officer was looking for a victim, and although he expected to find a gun, he could properly seize the guns under the plain view doctrine since they are dangerous in themselves. *Coolidge v. New Hampshire,* 403 U.S. 443 (1971).

Defendant's second claim is that the trial court erred in its instruction to the jury by using the term "plain case of guilt" when referring to the reasonable doubt standard. In its instruction, the court stated, "Now, the fact that there is a probability, a strong probability, that the defendant committed the offense is not sufficient proof to support a finding of guilty. A rule which requires proof beyond a reasonable doubt, obviously, means that a criminal case must not be decided by guess work. It means that the state must make out a plain case of guilt before a verdict of guilty can properly be rendered."

In reviewing the court's instruction on reasonable doubt, this court will look to the whole instruction "rather than isolating our attention to one sentence." *James v. United States,* 416 F.2d 467, 475-76 (5th Cir. 1969), *cert. denied,* 397 U.S. 907 (1970). To be adequate, the instruction when considered as a whole must convey the concept of reasonable doubt to the jury. *State v. Booton,* 114 N.H. 750, 761-62, 329 A.2d 376, 385 (1974); *State v. Hutton,* 108 N.H. 279, 289, 235 A.2d 117, 124 (1967); *Holland v. United States,* 348 U.S. 121, 140 (1954). In the instant case we cannot say that the trial court's charge failed to meet the test. Just prior to the challenged statement, the court, referring to the reasonable doubt standard in its charge, stated, "It means such a doubt as would cause a man of ordinary prudence to pause or hesitate when called to act upon the more important affairs of his or her life." This definition of reasonable doubt has specifically been approved by this court *(State v. Booton supra; State v. Hutton supra)* and the United States Supreme Court *(Holland v. United States supra.)*

Because of possible federal constitutional involvement, it may be preferable not to refer to a "plain case of guilt." However, we cannot say after reading this charge as a whole that it could have prejudiced defendant's rights. *State v. Mannion,* 82 N.H. 518, 527, 136 A. 358, 363 (1927). "The instruction as given was not of the

440

type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Holland v. United States,* 348 U.S. at 140.

*Exceptions sustained in part, overruled in part; new trial.*

KENISON, C.J., concurred in the result; the others concurred.

KENISON, C.J., concurring: It may be noted for future reference that in the more recent cases and commentary the rationale of the exclusionary rule has been reviewed *(Stone v. Powell,* 96 S. Ct. 3037 (1976)), it has not been extended in its application *(United States v. Janis,* 96 S. Ct. 3021 (1976)), and in some respects may have been restricted in its application *(United States v. Santana,* 96 S. Ct. 2406 (1976)). *See also* American Law Institute, A Model Code of Pre-arraignment Procedure, May 20, 1976, § 290.2, at 181-83 ("substantial violations"): Address of Justice Schaefer of the Supreme Court of Illinois, delivered at the National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice, at 8-9, April 8, 1976, also reported in 70 F.R.D. 159, 172 (1976).