Coos,
No. 4277.

ETHEL M. SWEENEY & a. v. ALFRED WILLETTE.

Argued March 3, 1954.

Decided March 31, 1954.

*Rich & Burns* and *Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the plaintiff.

*Hinkley & Hinkley* and *Jean L. Blais* (*Mr. Walter D. Hinkley* orally), for the defendant.

KENISON, C. J. The plaintiff requested that the jury be permitted to view the cab of the truck. The defendant objected that the condition of the truck had so far changed since the accident that a view by the jury would give them an erroneous impression of the amount of space inside the cab. The Presiding Justice, after examining the truck, noted that it was then in a rather dilapidated condition but permitted a view because "the court feels that the jury can get a general idea of the width of the seat and the inside of cab generally." The defendant concedes that the granting or denial of a jury view is discretionary with the Trial Court but argues that it was an abuse of discretion to allow it in this case. Both statute and judicial decisions confirm the discretionary nature of a view. R. L., *c.* 395, *s.* 21; *State* v. *Langelier*, 95 N. H. 97; IV Wig. Ev. (3rd *ed.*) *s.* 1164. In this state "it has not been the practice" to disturb the Trial Court's exercise of its discretion unless it appears that the ruling was plainly wrong. *Lydston* v. *Company*, 75 N. H. 23, 26; *State* v. *Cote*, 95 N. H. 108, 111. *Cf. Panagoulis* v. *Company*, 95 N. H 524. The jury had the

benefit of photographs of the truck taken the day after the accident and a plan drawn to scale of the driver's seat and dashboard as they existed at the time of the accident. Under those circumstances, there was no error in allowing the view. IV Wig. Ev. (3rd *ed.*) *supra, s.* 1163.

One of the plaintiff's minor sons was in the military service and his testimony at the first trial, while he was attending a seminary, was read to the jury. At this trial objection was made to the question, "Who is taking care of your tuition and board?" Subject to exception his answer that the bishop of the diocese was paying his tuition and board was allowed to stand. The defendant now claims that was evidence of poverty and therefore irrelevant and prejudicial. Reliance is placed on cases where new trials have been granted because counsel in argument to the jury directly or indirectly referred to the poor pecuniary condition of a plaintiff or a defendant. *Caverhill* v. *Railroad,* 77 N. H. 330; *McDonnell* v. *Merrill,* 79 N. H. 379; *Chapman* v. *Lee,* 80 N. H. 484; *Dziedzic* v. *Company,* 82 N. H. 472. The plaintiff relies on *O'Malley* v. *McGillan,* 86 N. H. 186, 187, and *Woodman* v. *Peck,* 90 N. H. 292, where evidence which might indirectly suggest poverty was considered admissible under the circumstances of the case as explanatory of the plaintiff's condition and conduct after the accident. See anno. 122 A. L. R. 1408; *Maravas* v. *Corporation,* 82 N. H. 533, 542. The authorities relied upon by the plaintiff and the defendant state the law in this state and are not in conflict. Their application to this case is dependent in part on the manner in which the evidence was introduced and the grounds upon which objection was made to its introduction.

In the first trial this evidence was admitted without objection. In this trial the objection was general without claim that the evidence suggested poverty or was prejudicial. No request was made for an instruction against the possible misuse of the evidence and it was admitted generally. *O'Malley* v. *McGillan, supra.* The cost and extent of the higher education the child was receiving was material as bearing on the probable contribution that the deceased would have made. *Cf. Hackett* v. *Railroad,* 89 N. H. 514. The evidence also explains circumstances which might otherwise discredit the plaintiff's own claim of impaired earning capacity as a result of the accident. The evidence that payment was made by another was not unduly prejudicial as a matter of law even though it could have been excluded by the Trial Court as a discretionary

matter if objection had been made on that ground during the trial. *Mudgett* v. *Emerson,* 67 N. H. 234. The defendant's exceptions to the admission of the evidence are overruled.

A garage mechanic testified that the distance between the defendant's truck and the automobile of the plaintiff after the collision was about 30 feet. On cross-examination the witness was asked if he was generally familiar with the standards laid down by the Motor Vehicle Department as to stopping distances and whether he had found those standards satisfactory. He answered yes to both questions. During further cross-examination he testified that at 35 miles an hour the truck should stop within 86 feet. Objection to the evidence of stopping distances was made because it assumed normal conditions and did not take into account that in this case there had been a violent collision. *Humphreys* v. *Ash,* 90 N. H. 223. The evidence was admitted and the Presiding Justice stated that "of course the jury can take into consideration the fact that there was a collision there." The witness was qualified, the evidence was found to be of probable aid to the jury and therefore the testimony was admissible. *Danos* v. *Company,* 94 N. H. 200, 201; *Carbone* v. *Railroad,* 89 N. H. 12, 20.

During plaintiff's argument to the jury it was stated that if the marks on the highway made by the defendant's truck "were the right wheels of that truck, the left side of the truck was over the center of the road at the time when those marks were made." The road was 27 feet 4 inches wide, making each lane 13 feet, 8 inches in width. The defendant undertakes to demonstrate from the record that this argument is not true. He places his truck as traveling on its side of the center of the highway by various distances varying from 6½ inches to 2 feet 7¼ inches depending on what part of the marks the measurements were made from and whether it was assumed that the outside rear dual wheels were located under the extreme edges of the body. However there was evidence that the defendant at the time of the collision was "pulling to [his] right," and that the truck was then proceeding at an angle to the course of the highway. Depending on the angle between the course of the truck and the highway the jury could find that some portion of the left side of the truck would be over the center line of the highway even though the tire marks were not. *Sweeney* v. *Willette,* 97 N. H. 330, 333, 334; *Abbott* v. *Hayes,* 92 N. H. 126.

The charge to the jury included a brief summary of claims of

each party. In the summary of the plaintiff's claims, there was included the claim that the defendant "failed to maintain a reasonable and proper lookout." It is argued that there is no evidence to support that proposition. While it is true that evidence introduced in behalf of the defendant would support a finding that he maintained a proper lookout, circumstantial evidence to the contrary could not be ignored by the Court in submitting the case to the jury. There was no error in submitting this issue to the jury on the evidence in this case. See *Paradis* v. *Greenberg,* 97 N. H. 173; *Lincoln* v. *Tarbell,* 98 N. H. 153.

Exception was taken to the failure of the Trial Court to give two requested instructions to the jury (numbered 1 and 20) relative to sympathy: "1. Your verdicts in these cases must be based solely on the evidence and cannot be based on either conjecture or sympathy for any of the parties . . . 20. It is only natural for people to feel sympathy for those who have been injured or who have lost members of their family as a result of an accident. However, you must remember that you are to decide these cases solely on the basis of the facts in the case and your verdicts are not to be influenced by any sympathy which you may feel." While the Judge's charge did not specifically mention sympathy, it followed the customary procedure in explaining the burden of proof, the weight of the evidence, the credibility of witnesses and causation. The jury was told that the plaintiff could recover only on the probabilities of the evidence before them based on their recollection and not on guess and conjecture, that there was no liability merely because there was a collision and resulting damages and that there was liability to pay damages only if they first found legal fault on the part of the defendant. They were further instructed that the mere fact that the suit had been brought and that there were serious and fatal injuries did not establish in and of itself that it was caused by the fault of the defendant. If a further cautionary instruction on sympathy was called for in this case, it is difficult to see why it would not be applicable in most motor vehicle damage cases since there were no peculiar circumstances in this case to make it unique. In this state the granting of cautionary instructions is discretionary (*Lemire* v. *Haley,* 93 N. H. 206, 209; *Bernier* v. *Nute,* 77 N. H. 568) rather than mandatory. *LaDuke* v. *Lord,* 97 N. H. 122, 124. The denial of these requests was not error.

The charge to the jury that the plaintiff and the deceased as passengers could not have prevented the accident was justified by

the evidence. *Mason* v. *Andrews*, 86 N. H. 277, 279; *Laflamme* v. *Lewis*, 89 N. H. 69, 77; *LePage* v. *Theberge*, 97 N. H. 375, 377. The instructions on damages properly informed the jury of the elements they were to consider in arriving at a verdict if they first found liability. There was nothing in the language of the instructions which emphasized the aspect of damages and the language used was not calculated to mislead the jury. Therefore the exceptions are overruled and the order is

*Judgment on the verdicts.*

All concurred.