Hillsborough
No. 6496

STATE OF NEW HAMPSHIRE v. KENNETH R. STREETER

July 31, 1973

*Warren B. Rudman,* attorney general, and *Thomas D. Rath,* attorney *(Mr. Rath* orally), for the State.

*Harkaway, Gall & Shapiro (Mr. Joseph Gall* orally) for the defendant.

GRIFFITH, J. The defendant in this case was found guilty in a jury-waived trial on three indictments for the sale of controlled drugs. RSA 318-B:1 VI (Supp. 1972), 2 (Supp. 1972), 26 (I) (Supp. 1972), as inserted by Laws 1969, 421:1. He was sentenced to two concurrent sentences of not more than ten years nor less than five years in the State prison and the third indictment was continued for sentence. The defendant's motion to reconsider the sentence was denied after hearing by *Dunfey,* J., who reserved and transferred the defendant's exceptions.

The defendant's only exception during the trial argued here was to the trial court permitting the State to reopen their case in order to have marked as exhibits, two packages of marijuana and one of amphetamine which had previously been marked for identification only. We find no abuse of discretion by the trial court in thus permitting the State to reopen for the purpose of curing their technical error of failing to have the drugs marked as exhibits and defendant's exception is overruled. *State v. Petkus,* 110 N.H. 394, 269 A.2d 123 (1970); *State v. Comparone,* 110 N.H. 398, 269 A.2d 131 (1970).

Defendant's exception to the denial by the trial court of his motion to reconsider the sentence presents on the record before us a more serious question, as we indicated in the petition for bail previously considered here. *Petition of Kenneth*

*R. Streeter,* 112 N.H. 305, 294 A.2d 385 (1972). Defendant does not question the legality of the sentence since it is within statutory limits but argues that the severity of the sentence when compared with that of the codefendant constituted an abuse of discretion by the trial court. Unlike the case of *State v. Ferbert,* 113 N.H. 235, 306 A.2d 202 (1973), the record here contains substantial information about the codefendant's participation and background so that we are unable to say as in the *Ferbert* case that a comparison of the sentences is irrelevant. It appears from the transcript of the various hearings that the codefendant, who had pleaded guilty to three indictments prior to defendant's trial, and who was described by a State trooper as the "brains" of the operation, was sentenced to not more than three nor less than a year and a day in State prison. An added difficulty in the sentencing process here was that the codefendant was sentenced by a different judge. Thus the normal variables present in sentencing two defendants had the additional variable of two different judges.

Recent developments in the field of sentencing have been directed at minimizing the disparity of sentence problem and developing sentencing guides directed at sentencing the criminal rather than the crime. Beginning with the Pilot Institute on Sentencing by Federal Courts in 1959 reported in 26 F.R.D. 231 a multitude of sentencing institutes have been held by the federal judiciary for these purposes. Guidelines for sentencing have been formulated (*see* 27 F.R.D. 389, 390 (1960)) and sentencing councils of judges have been provided in some federal districts. *See* Zavatt, *Sentencing Procedure in the United States District Court for the District of New York,* 54 F.R.D. 327 (1972); 45 Neb. L. Rev. 499 (1966); 45 Neb. L. Rev. 513 (1966); ABA Standards Relating to Sentencing Alternatives and Procedures § 7.1 (Approved Draft 1968). In his 1973 report to the legislature on the judiciary earlier this year, Chief Justice Kenison recommended consideration by the legislature of appellate review of sentences by a panel of trial judges similar to that provided in Connecticut and Massachusetts. Mass. Ann. Laws ch. 278, §§ 28-A-D (1956); Conn. Gen. Stat. §§ 51-194-97 (1958), *as amended,* §§ 51-196 (Supp. 1959); Note, *Appellate Review of Pri-*

*mary Sentencing Decisions — A Connecticut Case Study,* 69 Yale L.J. 1453 (1960).

These proposals in dealing with disparity of sentences all make it apparent that the problem is one that generally should be dealt with at the trial level. This is not to indicate that the mandatory sentence is the solution or that we should cease to treat the convicted criminal as an individual. Disparity of sentencing, however, strikes at the fundamental basis of our penal system. A convicted criminal should generally receive the same punishment as another with a like background who has committed the same crime. This is not a matter for executive clemency but justice to be rendered by the courts.

Pragmatically every judge must recognize that regardless of severity of a sentence nearly every criminal that he sentences will eventually return to society. Whether the person sentenced returns as a useful member of society or a lawbreaker in part is dependent upon the wisdom of the sentence. "The true design of all punishments being to reform. not to exterminate mankind." N.H. CONST. pt. 1, art. 18. While no judge can predict that his sentence will help to rehabilitate the criminal, the sentence should not retard this result. "Justice is measured in many ways, but to a convicted criminal its surest measure lies in the fairness of the sentence he receives. Whether a sentence is fair cannot, of course, be gauged simply by comparing it with the punishment imposed upon others for similar offenses. But that test, though imperfect, is hardly irrelevant." *Shepard v. United States,* 257 F.2d 293, 294 (6th Cir. 1958). Penologists agree that disparity of sentences without a rational basis has an inhibiting effect upon the possibilities of rehabilitation. Note, *Sentence Review,* 69 Yale L.J. 1453, 1459 (1960).

In its brief, the State recognizes that this court may possess the power to review this sentence under RSA 490:4 (Supp. 1972) which gives it "general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses." It urges us, however, not to interfere with the traditional unfettered discretion of the trial court in sentencing. Except where specifically authorized by statute, appellate courts have generally refused to review sentences. Annot.,

29 A.L.R. 313 (1924); 89 A.L.R. 295 (1934); *Gore v. United States,* 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S. Ct. 1280 (1958); Mueller, *Appellate Review of Legal But Excessive Sentences,* 15 Vand. L. Rev. 671 (1962).

In sentencing this defendant, the trial court made an extensive statement in which it noted that the defendant had been engaged for some time in a large scale traffic in drugs. The court commented on the defendant's four years of college and the lack of anything in his background to excuse or condone his actions. Remarking generally on the evils of the drug traffic, the court finally stated that the sentence was intended to be harsh as a warning to all others so disposed to cease immediately all such sales in any form. "They would be well advised to get out of the State of New Hampshire. This state's children can't and won't be ruined by money-hungry criminals."

On the motion to reconsider the sentence, several witnesses testified including the codefendant Dunphy, who was then serving a sentence of not more than three years nor less than a year and a day. Both Dunphy and a girl who had lived at the place where the drug sales took place testified that Dunphy was the principal in the selling operation. The State trooper who testified agreed that Dunphy was the "brains" of the operation, but would not agree that he was more involved than the defendant here. In denying the motion to reconsider the sentence, the court reiterated and expanded on the previous reasons for the sentences imposed. Apparently referring to the involvement of the codefendant in the drug sales, the court stated that the fact that "he [the defendant] pushed for another comes to nothing in these circumstances."

The evidence in the case, apparently accepted by the trial court, indicates that the head of the drug-selling operation here received a minimum sentence approximately one-fifth the minimum meted out to this defendant. We are not prepared to substitute our judgment for that of the trial court that such a disparity of sentences was not justified. We did not see or hear either the witnesses or the defendant nor do we have the probation report before us. Accordingly we refuse to revise in this court the sentences imposed below.

However, in order for a trial judge to effectively exercise his discretion, it must appear that he considered all the relevant factors necessary to that exercise. *See Townsend v. Burke,* 334 U.S. 736, 741, 92 L. Ed. 1690, 1693, 68 S. Ct. 1252, 1255 (1948). We noted previously that it was a different judge than the trial judge in this case that sentenced Dunphy.

While it is not clear from the trial court's statements that any substantial consideration was given to the Dunphy sentence, a majority of the court are of the opinion that under the circumstances of this case it should not be remanded to the trial court for reconsideration of the sentence. However, nothing in this opinion is intended to preclude the trial court from such reconsideration sua sponte in the light of this opinion.

*Exceptions overruled.*

All concurred.