Rockingham
No. 6863

STATE OF NEW HAMPSHIRE

v.

FRANCES BOOTON

November 29, 1974

*Warren B. Rudman*, attorney general, and *Thomas D. Rath*, assistant attorney general (*Mr. Rath* orally), for the State.

*Barrett & MacNeill* and *Leppo & Paris* and *Robert J. Ciolek* (of Massachusetts) *(Mr. John T. Barrett* and *Mr. Ciolek* orally) for the defendant.

KENISON. C.J. Frances Booton was tried upon an indictment for murder in the second degree of her husband. Trial by jury with a view of the scene of the crime resulted in a verdict of guilty of the lesser-included offense of manslaughter in the first degree (*Nichols v. Vitek*, 114 N.H. 453, 321 A.2d 570 (1974)) and she was sentenced to a term of not more than twenty nor less than eight years imprisonment. RSA 585:8. In a prior proceeding this court sustained the trial court's denial of defendant's motion for a stay of sentence and for bail after conviction pending appeal. *State v. Booton*, 114 N.H. 152, 317 A.2d 18 (1974).

The defendant excepted to the denial of several motions for discovery. During the course of trial, she excepted to

the granting of a view, to the denial of her motions for mistrial and directed verdict, and to certain parts of the court's charge to the jury. *Dunfey*, J., reserved and transferred these and other exceptions.

The following facts were established at trial. On November 23, 1972, Candia Police Chief Robert Baker responded to defendant's request for assistance by going to the Booton residence. Upon arrival he was admitted to the house by Mrs. Booton who directed him to the living room where her husband was lying dead on the floor. After being advised of her right to remain silent and to counsel, the defendant related to Chief Baker that she and her husband had been "fooling around" with a gun. Each had shot holes in various portions of the house. Deputy Sheriff Robert Farrar of Rockingham County also questioned defendant after once again informing her of her rights. In response to the question as to who had been holding the weapon when Mr. Booton was shot, she replied that "I must have been holding the gun."

## I. Pretrial Discovery

Of defendant's seventeen motions for pretrial discovery only six were denied by the trial court. Defendant maintains that the denial violated her constitutional rights under the fifth, sixth and fourteenth amendments to the Federal Constitution and article 15 of the State constitution.

Discovery in criminal cases has been increasingly expanded to afford the accused some means of tapping the investigative resources of the State. ABA Project on Standards for Criminal Justice, Discovery and Procedure Before Trial § 1.2, § 2.1 (Approved Draft 1970); Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L.J. 1149, 1180-85 (1960); *see* Fed. R. Crim. P. 16. But, despite the recognition of the relatively disadvantageous position of the criminal defendant, unlimited discovery has never been ensconced as a constitutional right. What is discoverable remains within the discretion of the trial court except where the prosecution has information favorable to the accused's innocence and where a defendant is compelled to divulge

information to the State pursuant to a particular statute such as a notice-of-alibi rule. 2 L. Orfield, Criminal Procedure Under the Federal Rules § 16:12 (Supp. 1974); Nakell, *The Effect of Due Process on Criminal Defense Discovery*, 62 Ky. L.J. 58, 59 (1974); *Wardius v. Oregon*, 412 U.S. 470, 475-76 (1973).

In accordance with the increasingly expansive view of discovery, the rule in this State is a flexible one allowing the trial court to determine what matters are discoverable. *State v. Superior Court*, 106 N.H. 228, 230, 208 A.2d 832, 833-34 (1965); Annot., 7 A.L.R.3d 8 (1966). In exercising its discretion the trial court considers defendant's need for the information and the effect disclosure will have on the prosecution. *State v. Healey*, 106 N.H. 308, 309, 210 A.2d 486, 488 (1965). Under this approach the defendant in this case was afforded a great amount of information. In granting most of her motions for discovery, the trial court afforded defendant access to the scientific and medical reports, allowed her to depose experts and law enforcement officers involved, and permitted her to inspect the physical evidence.

Nevertheless, defendant maintains that it was error for the trial court to deny her motions for a list of witnesses, for grand jury minutes, for a list of witnesses that testified before the grand jury, for particulars, and for exculpatory evidence. There was no error in the denial of these motions. Defendant sought a list of witnesses who would testify at trial six months in advance in order to obtain potentially exculpatory information. Undoubtedly, providing defendant with a list of witnesses prior to trial promotes fairness, adequate preparation and courtroom efficiency. ABA Project on Standards for Criminal Justice, Discovery and Procedure Before Trial § 2.1 (a) (i) (Approved Draft 1970). RSA 604:1 (Supp. 1973) recognizes the advantages of disclosure by requiring that one who is indicted for a felony "the punishment of which may be death" is entitled to a list of witnesses twenty-four hours prior to trial. No constitutional mandate necessitating earlier disclosure exists. Nakell, *The Effect of Due Process on Criminal Defense Discovery*, 62 Ky. L.J. 58, 59 (1974).

Defendant contends that in denying her motions for discov-

ery of grand jury minutes and for a list of witnesses who testified before the grand jury the trial court deprived her of due process. In conformity with the practice in most States the proceedings of the grand jury in this State are secret. *Opinion of the Justices*, 96 N.H. 530, 73 A.2d 433 (1950). This traditional secrecy has been questioned on the grounds that it would be useful for a defendant to have the minutes and a list of witnesses in preparing his defense. ABA Standards, *supra* § 2.1 (a) (iii); Calkins, *Grand Jury Secrecy*, 63 Mich. L. Rev. 455 (1955); Sherry, *Grand Jury Minutes: The Unreasonable Rule of Secrecy*, 48 Va. L. Rev. 668 (1962); *see* Fed. R. Crim. P. 6(e), 16(a) (3). However, whether the grand jury's secrecy will be invaded remains a matter within the trial court's discretion in the federal as well as State courts. 2 L. Orfield, Criminal Procedure Under the Federal Rules § 16:20 (Supp. 1974); Annot., 20 A.L.R.3d 7 (1968). Most State courts do not permit discovery to impinge upon the shroud of secrecy. *Id.* at 19. In this State the statute permits but does not require that grand jury minutes be transcribed. RSA 600:5. The complete absence of minutes in this case makes the granting of defendant's requests impossible. *McKay v. State*, 489 P.2d 145, 147-48 (Alas. 1971). Failure to require transcription is not a denial of due process. *State v. Levesque*, 281 A.2d 570, 572 (Me. 1971).

Defendant also argues that the trial court erred in denying its motions for particulars since the indictment was not sufficiently specific to enable her to present an adequate defense. An indictment must inform a defendant of the factual basis of the alleged offense with enough specificity so that he can prepare for trial. *State v. Hoyt*, 114 N.H. 256, 257, 319 A.2d 286, 287 (1974); *State v. Greenwood*, 113 N.H. 625, 626, 312 A.2d 695, 696 (1973); *State v. Strescino*, 106 N.H. 554, 557, 215 A.2d 706, 708 (1965). In this case, the indictment met this standard by alleging that on a specified date in her home, defendant killed her husband with malice and forethought by shooting him with a .25 caliber semi-automatic pistol.

Defendant made two pretrial motions pertaining to the disclosure of exculpatory evidence by the prosecution. Her motion for evidence favorable to the accused was denied

since the county attorney had already furnished the information. Defendant's second motion was granted as to exculpatory evidence but denied as to impeaching evidence. Defendant contends that these two motions should have been allowed in all respects as to all potential witnesses so that she could defend the charge adequately. Although the prosecutor has a constitutional duty to produce evidence favorable to the accused, he need not provide her with all the evidence which she requests. *State v. Dukette*, 113 N.H. 472, 477, 309 A.2d 886, 889 (1973); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The test where evidence favorable to the defense has been withheld is whether the evidence has a reasonable likelihood of affecting the judgment of the jury. *Id.* In this case the prosecution carried its burden by giving the defendant exculpatory information available to it. There was no showing that additional favorable information was withheld, but rather a mere allegation that the prosecution might have information potentially useful for impeachment. Since defendant's request went beyond the *Dukette* standard, the trial court correctly denied it.

Defendant's final contention pertaining to discovery is that the prosecutor engaged in an unfair and deceptive practice by failing to comply with the court's orders that defendant be furnished with copies of statements made by her and that she be allowed to inspect the statements of witnesses. In particular she objected to the fact that she had not been given statements obtained by the Candia chief of police concerning the nature of her marital relationship with the deceased. The prosecutor claimed that these statements were a product of the continuing course of investigation and, thus, came to his attention only three or four days prior to their introduction at trial. As a result he failed to comply with the court's earlier order. The trial court, however, found no deceit in the prosecutor's failure to comply and according to the statement of defendant's counsel at trial, the motions sought vital statements of the defendant and of the investigating officers. The motions did not extend to matters like the nature of the marital relationship between Mrs. Booton and her husband. Under these circumstances we find no error in the prosecutor's actions.

## II. View

Defendant also excepted to the trial court's allowing the jury a view of the Booton residence. In this State a view is evidence. Loughlin, *Some Observations on New Hampshire Trial Procedure*, 13 N.H.B.J. 59, 62 (1973); J. McCormick, Evidence § 216 (1972); *Chouinard v. Shaw*, 99 N.H. 26, 27-28, 104 A.2d 522, 523 (1954). Whether to allow a view is by statute within the "discretion" of the trial court (RSA 519:21) and its ruling will not be disturbed unless plainly wrong. *State v. Langelier*, 95 N.H. 97, 58 A.2d 315 (1948); *State v. Knapp*, 45 N.H. 148 (1863).

The crux of defendant's contention is that the view was highly inflammatory and did not present a fair representation of the home on the day of Mr. Booton's death since the house had been unoccupied for a year and various objects had been removed. In short, the defendant maintains that the disorder of the house may have prejudiced defendant. The purpose of permitting the view, however, was for the jury to obtain an idea of the house's basic layout and to see the bullet holes. The housekeeping status of the Booton residence may have changed but these factors remained substantially the same. *Sweeney v. Willette*, 98 N.H. 512, 513-14, 104 A.2d 398, 400 (1954). Although it is true, as defendant argues, that the basic layout might have been gleaned from photographs and testimony, we cannot say it was an abuse of discretion for the trial court to allow the view.

## III. Motions for Mistrial

Defendant's next group of exceptions centers around her three motions for mistrial which the trial court denied. The basis for granting a mistrial is the existence of some circumstances which indicates that justice may not be done if the trial continues to verdict. The trial court correctly found that such circumstances did not exist in this case.

As part of his opening remarks the prosecutor stated that "[t]he events following the marriage, as evidence will indicate, showed a bumpy — if you will — relationship between this couple. Mr. Booton expressed mistrust . . . ." Although the

trial court cautioned the jury that the opening remarks do not constitute evidence, defendant requested a mistrial on the ground that the prosecutor's remarks as quoted were highly inflammatory, constituted hearsay in part and violated the communication privilege between husband and wife. A mistrial was not warranted by these remarks. In addition to the fact that an opening statement is not evidence, defendant had the opportunity to point out to the jury which allegations were not proven. In order to constitute reversible error a prosecutor's opening statement must be completely unsupported by the evidence, the defendant must be prejudiced thereby and the prosecutor must be shown to have acted in bad faith. 5 F. Wharton, Criminal Law and Procedure § 2033 (Supp. 1974). There is no showing of bad faith here. And, ample evidence exists to support the prosecutor's comments in the fact that Mr. Booton would not allow the defendant to speak with neighbors and in defendant's own attempted suicide.

Defendant also maintains that the trial court's handling of two articles relating to the trial which were published in newspapers with local circulation during the course of the proceeding violated her right to a fair trial as guaranteed by the sixth and fourteenth amendments to the Federal Constitution and article 15 of the New Hampshire constitution. The trial court denied her motion for a mistrial in the face of allegedly inaccurate reporting and reporting that disclosed what transpired while the jury was out. It also denied defendant's motion for *voir dire* to determine the effect of the articles on the jury.

The trial court has a large measure of discretion on the issue of prejudice resulting from the jury's reading of news articles pertaining to the trial. *Marshall v. United States*, 360 U.S. 310, 312 (1959). Consequently, each case turns on its particular facts. In considering the two news articles which defendant brought to the court's attention, the primary question is whether the portions objected to were so prejudicial as to mandate a mistrial. Defendant objected to an article appearing in the *Foster Daily Democrat* on two grounds. First, the paper inaccurately reported that the trial judge let the second-degree murder charge stand over defendant's objec-

tion that malice could not be shown, when in fact the judge let the charge stand unless he changed his mind later in the trial, at which time he would rule on the motion again. Second, this matter was reported even though it transpired while the jury was out. Defendant also moved for a mistrial on the basis of an inaccuracy in an article appearing in the *Manchester Union Leader* which reported defendant as saying that "I must have fired . . . ." the weapon, when in fact she stated that she "must have been holding" it.

In denying defendant's motions for mistrial the trial court noted that the jury had been instructed from the outset to avoid newspapers. He also found that the inaccuracies objected to were so small that they could not prejudice the defendant. As to the matter reported in the *Foster Daily Democrat* regarding what took place when the jury was out, the court deemed it not prejudicial since defendant was simply reiterating a position (*i.e.*, that the State could not prove malice) that she had assumed from the beginning of the trial and which was evident to the jury. The reason for denying defendant's requests for *voir dire* was that to allow it would simply draw the jury's attention to the articles.

We find no error in the trial court's denial of these motions for mistrial. In his handling of the two articles, he acted in consonance with accepted practices. ABA Project on Minimum Standards for Criminal Justice, Fair Trial and Free Press § 3.5(a), (e) (Approved Draft 1968). Throughout the course of the trial, the judge repeatedly warned the jury to rely only on sworn testimony and to avoid newspapers. He warned the reporters in court not to report anything that occurred while the jury was out. Thus, this case is clearly distinguishable from those cited by defendant where the permeation of mass media into the trial process mandated a mistrial. *Cf. Sheppard v. Maxwell*, 384 U.S. 333 (1966).

Defendant's final motion for mistrial was based on testimony introduced at trial. On direct examination Robert Farrar, a deputy in the Rockingham County Sheriff's Department, testified that after Mrs. Booton was asked who was holding the gun at the time her husband was shot, she became "upset". Farrar further testified that he "asked her other questions about the clip, and who put the clip in, and so

forth. And she refused to answer any more questions." Defendant contends that the admission of Farrar's testimony concerning her silence in response to allegedly accusatorial statements violated her privilege against self-incrimination guaranteed by the fifth amendment to the Federal Constitution and by article 15 of the State constitution, and that therefore a mistrial was warranted. Prior to initiating the questioning Officer Farrar warned defendant of her rights; in agreeing to answer his questions, she waived her rights. However, by remaining silent in response to further questions defendant reinvoked her constitutional privilege.

It is a well-established rule that the prosecutor may not use at trial the fact of defendant's silence in the face of accusations. *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966). *See also* 87 Harv. L. Rev. 882 (1974); *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir. 1973). But, here the prosecutor did not utilize the fact of defendant's silence nor did he comment upon it at any time. Farrar's statement that Mrs. Booton remained silent was not even responsive to the prosecutor's question as to what further questions Farrar had asked her nor was it made in the face of an accusation. In this situation there was no prejudice requiring declaration of a mistrial.

Defendant, however, argues that Officer Farrar's description of her as "upset" also violated her privilege against self-incrimination. Defendant cites no authority for this position and we have found none. The privilege against self-incrimination protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. *Schmerber v. California*, 384 U.S. 757, 761 (1966). Farrar's exact words were as follows:

"After I asked her who was holding the gun, when it was fired, she became upset. She kept saying, 'We were only fooling around. We were only fooling around.' She said, 'I must have been holding it.'"

We need not decide whether defendant's physical reaction to the questioning might be classified as testimonial or communicative since the fact that she appeared upset added nothing to the admission which she voluntarily made, and, consequently, no error was involved in allowing the testimony.

## IV. Reopening of Case; Charge to Jury; Motions for Directed Verdict

Defendant's other exceptions are based on several grounds. Two items of the state's physical evidence, the weapon and the clip allegedly used by defendant, were marked for identification but not formally introduced into evidence during the course of the trial. After the jury had begun its deliberations the trial court allowed the State to reopen the case for the limited purpose of moving for admission of these two items into evidence. Neither the jury nor the defendant was present during the reopening. Defendant objected to this procedure on the basis that reopening the case was an abuse of the trial court's discretion and that it denied her the right of confrontation guaranteed by the sixth amendment to the Federal Constitution and article 15 of the State constitution.

The decision whether or not to reopen a criminal case lies within the discretion of the trial court. *State v. Streeter,* 113 N.H. 402, 403, 308 A.2d 535, 536 (1973); *State v. Petkus,* 110 N.H. 394, 398, 269 A.2d 123, 125 (1970); *State v. Comparone,* 110 N.H. 398, 399, 269 A.2d 131, 132 (1970). The trial court found that a proper foundation had been laid for the admission of these items and that there was no objection to their admissibility except the fact that the prosecutor had failed to move for admission during the trial. Consequently, there was no abuse of discretion in allowing the prosecutor to rectify the technical error. During the course of the trial when the items were identified, defendant had sufficient opportunity to exercise her right of confrontation. To require that the jury be recalled for the admission of these items would, as the trial court pointed out, only draw unreasonable attention to the items.

Defendant also excepted to two portions of the judge's charge to the jury. She maintains that the trial judge's definition of a reasonable doubt as one that would cause a person to refrain from acting in a personal or business matter was too extreme and shifted the burden of proving guilt from the State. However, reasonable doubt is properly defined by equating it with whether or not one would hestitate to

undertake an important business or personal matter. *State v. Hutton,* 108 N.H. 279, 289, 235 A.2d 117, 124 (1967). The test of the adequacy of the charge is whether, considered as a whole, it conveyed the concept of reasonable doubt to the jury. *Id.* In this case the trial court's charge met this test. In the course of the charge the judge not only defined a reasonable doubt as hesitation in important personal or business matters but also as a doubt that is not fanciful or frivolous, and as a doubt for which one has a good, solid and sufficient reason based on all the evidence. He further stated that to find the defendant guilty the jury had to conclude that no other reasonable conclusion was possible.

Defendant also excepted to the court's charge insofar as it indicated that the defendant was not required to take the stand and that the jury may not infer anything from her failure to do so. In addition the defendant objected to the trial court's warning that she had the right to terminate questioning at any time. We find no merit in defendant's contention that these instructions, which the court had previously indicated would be given, should not have been given since she had the opportunity to request their omission but did not do so.

Finally, defendant alleges error in the denial of its three motions for directed verdict. The rule in this State is that upon defendant's motion for a directed verdict, the evidence is construed most favorably to the State. Applying this standard to the facts of this case, we find no error in the trial court's denial of defendant's motions. At the close of the prosecutor's opening statement, defendant requested a directed verdict on the ground that no allegation of malice which is required for conviction of second-degree murder, or of culpable negligence which is required for conviction of first-degree manslaughter was made. RSA 585:1, 8, 9: *see* Mueller, *Where Murder Begins,* 2 N.H.B.J. 214 (1960). We agree with the trial court that the State's allegations sufficed. Not only was the indictment which alleged malice read to the jury but the State outlined the alleged facts that defendant went to the bedroom, procured the weapon and ammunition, loaded the revolver and shot her husband. Moreover, the State alluded to the quality of marital life between the defen-

dant and the deceased, from which the requisite malice might also be inferred.

At the close of the State's case defendant once again requested a directed verdict, contending that a prima facie case for neither second-degree murder nor manslaughter had been established. Taking the evidence in a light most favorable to the State, however, a prima facie case was established. Testimony of various witnesses showed that Mrs. Booton feared her husband, that the marriage was a troubled one, that they were unfriendly on the date of Mr. Booton's death, that they were "fooling around" with a loaded revolver and that Mrs. Booton was holding it when Mr. Booton died. On the basis of these facts malice could be inferred even though the jury chose not to do so. And, it is apodictic that the same facts support the "design to effect death" required by RSA 585:8. Since there was sufficient evidence to submit the case to the jury based on the prima facie case established by the State, the trial court correctly denied defendant's motion for a directed verdict made after she had rested her case.

*Defendant's exceptions overruled.*

All concurred.