Merrimack
No. 78-136

## THE STATE OF NEW HAMPSHIRE

v.

## BUCKMAN ANDREWS OSBORNE

May 31, 1979

*Thomas D. Rath*, attorney general (*Paul W. Hodes*, attorney, orally and *John C. Boeckler*, assistant attorney general, by brief), for the State.

*Dennis Pizzimenti*, of Concord, and *Buckman Andrews Osborne*, pro se (*Dennis Pizzimenti* orally), for the defendant.

BROCK, J. This case presents numerous legal issues stemming from the defendant's conviction on December 15, 1977, of kidnapping, RSA 633:1, and aggravated assault, RSA 631:2. The defendant's several attorneys filed many pretrial motions. The most significant one for this appeal was a motion to suppress physical evidence taken from the defendant's living quarters. After the defendant was found guilty by a jury, the Trial Court (*Johnson*, J.) reserved and transferred the defendant's exceptions.

The evidence presented at trial showed that on the morning of November 3, 1976, Mrs. Doris Polka was attacked and beaten in her real estate office in Newbury. Her assailant bound and gagged her with rope and tape, blindfolded her, and took her to the third floor of a house behind the office, where she was ultimately found by her husband and a police officer. At the hospital, the victim told police investigators that the assailant wore dark blue slacks, a maroon nylon jacket, and heavy yellow rubber gloves, and had covered his head and face with a mosquito net. She also stated that during the altercation she had stabbed the assailant's leg and broken his silver expansion watch band. Upon police questioning about possible suspects, she told them that a Dr. Osborne had visited the realty office daily for two weeks including a three-hour visit the previous afternoon. With assistance from the postmaster and the chief of police, Lt. Wilson determined that the defendant resided in a cottage at a motel. At about 6:45 p.m. on the evening of November 3, 1976, Lt. Wilson and Trooper Garvin went to the motel, and the proprietor pointed out the defendant's cottage. All the lights were on in the cottage, but no car was parked in the defendant's space. The officers knocked and called but got no response. Thinking that the defendant, if he had been the assailant, might have a serious leg injury and need assistance, Lt. Wilson opened the unlocked door and entered the cabin. Inside, he noticed some bandages, what appeared to be blood, and a pair of heavy yellow rubber gloves. He then left the cabin.

The officers decided that they should remain to talk with the defendant as a suspect, but did not think they had enough facts to support a search warrant. They waited about three hours until the defendant returned. The officers then went to the Osborne cabin and knocked. When the defendant answered the door, Lt. Wilson identified himself and asked if they could come in. The defendant invited them in. As he entered, Lt. Wilson noticed a wristwatch, without its watchband, on the table in the living room. Lt. Wilson then advised the defendant of his *Miranda* rights because of the seriousness of the offense he was investigating. Mr. Osborne asked if he was under arrest. Lt. Wilson

replied that he was not. Lt. Wilson asked the defendant if he knew Doris Polka, and the defendant replied that he did not. Lt. Wilson then asked if he could look around. The defendant responded, "Help yourself, go ahead." Lt. Wilson went into the bathroom and observed a pair of yellow rubber gloves, a red parka hanging in the shower, and bloody gauze and tape in a wastebasket under the sink. He also observed a coil of rope similar to that which had been used to tie up Mrs. Polka. Lt. Wilson then informed the defendant that he was under arrest. Lt. Wilson frisked Mr. Osborne and felt a bulge on the side of his left leg that was found to be a large bandage with blood oozing from it. Lt. Wilson then secured the cabin, and transported the defendant to the New London police station for booking.

Relying on information obtained during the second entry, Lt. Wilson then obtained from the New London District Court a warrant to search the cottage and a station wagon in which the defendant had returned to his cottage. Lt. Wilson executed the warrant that night, seizing numerous items of evidence from the cottage and motor vehicle, including the clothing observed during the search conducted in defendant's presence and allegedly with his consent. On November 10, 1976, pursuant to a second search warrant, a typewriter was seized from the defendant's personal effects which by then had been placed in a storeroom at the motel.

The defendant excepted to the trial court's order denying his motion to suppress the evidence seized pursuant to these warrants, claiming that the two warrantless entries made prior to the issuance of the search warrants were constitutionally defective. If defendant's assertion is correct, the evidence obtained under the authority of the warrants is also tainted. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

Since the State, in its affidavits supporting the issuance of the search warrants, recited only facts determined during the second warrantless entry and in no way relied upon the first, we consider only whether the second entry was constitutionally defective. The State claims that the second entry was justified by the defendant's consent. The defendant contends that he did not have the mental capacity to consent, and that his consent should be disregrded because the State did not demonstrate affirmatively that he knew of his right to refuse consent.

The defendant first argues that the trial court erred in hearing and deciding the motion to suppress before the defendant could be evaluated on an in-patient basis at the New Hampshire Hospital, thereby depriving him of his right to call witnesses on his behalf. U.S. CONST.

amend. VI; N.H. CONST. pt. 1, art. 15. In March 1977, the defendant was examined pursuant to RSA 135:17 by Dr. Hans Standow. The defendant later moved for a second psychiatric evaluation on the grounds that the State would challenge Dr. Standow's testimony. The motion was granted on November 21, 1977, one week prior to the hearing on the motion to suppress, and the second evaluation was not done prior to that hearing.

■■ RSA 135:17 provides that a trial court may order such pretrial psychiatric examination of a defendant as the circumstances of the case may require. The defendant did not have an absolute right to a second evaluation. There is no indication that the defendant was prejudiced by the absence of a second expert witness. The defendant told the court that Dr. Standow was the only psychiatrist who had ever understood him. Dr. Standow's lengthy testimony at the suppression hearing was highly favorable to the defendant. At the hearing the defendant did not object to the State's failure to provide the second examination or indicate a need for the additional evidence, so that the trial court had no opportunity to take remedial action. The issue is therefore waived. *State v. Boisvert*, 119 N.H. 174, 400 A.2d 48 (1979).

■ Second, the defendant contends that at the time he consented to the police search of his cottage he was experiencing a psychiatric disorder that impaired his capacity to give a valid consent. His mental capacity was the principal issue at the suppression hearing. There may be situations in which, due to psychiatric disorders, drugs or intoxication, the defendant's consent is "not the product of a rational intellect and a free will" and is therefore invalid. *United States v. Johnson*, 563 F.2d 936, 939 (8th Cir. 1977), *cert. denied*, 434 U.S. 1021 (1978). "No matter how genuine the belief of the officers is that the consenter is apparently of sound mind and deliberately acting, the search depending on his consent fails if it is judicially determined that he lacked mental capacity." *United States v. Elrod*, 441 F.2d 353, 356 (5th Cir. 1971); *see Nelson v. Hancock*, 239 F. Supp. 857, 869 (D.N.H. 1965), *rev'd on other grounds*, 363 F.2d 249 (1st Cir. 1966). The determination of mental capacity to consent is a question of fact for the trier of fact, which will not be disturbed if it is reasonably supported by the evidence. *State v. Koucoules*, 343 A.2d 860, 873 (Me. 1974); *Commonwealth v. Harmond*, 382 N.E.2d 203, 206 (Mass. 1978); *cf. State v. Plummer*, 117 N.H. 320, 327, 374 A.2d 431, 435 (1977). At the suppression hearing, Dr. Standow, who first examined the defendant several months after the search, testified at length about the defendant's alleged "psychotic state." The other witnesses, including the arresting officers, testified that on the day of the search the defendant had

appeared to them to be acting and reacting normally. Taken as a whole, the evidence supports the trial court's finding that the defendant had a sufficient understanding of the consequences of his consent to give a valid consent to the search.

█ █ Finally, the defendant contends that his consent was invalid because the State did not prove that he knew of his right to refuse consent to a warrantless search. *See State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975). The United States Supreme Court has specifically rejected the argument that the fourth amendment requires such an affirmative showing. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). It would be possible for this court to impose a heavier burden on the State under the New Hampshire Constitution, pt. 1 art. 19. *See, e.g., State v. Hogg*, 118 N.H. 263, 385 A.2d 844 (1978); *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977). We are not at this time convinced, however, that the added requirement urged by the defendant is necessary. In many instances, a person subject to search understands that the only practical consequence of his refusal to consent will be to force the State to obtain a warrant authorizing the search. *See, e.g., United States v. Curiale*, 414 F.2d 744 (2d Cir.), *cert. denied*, 396 U.S. 959 (1969). Unlike a waiver of fifth amendment rights, the consent to a police search may in certain circumstances be given with or without the defendant's knowledge by a third person whose interests are different from the defendant's. *State v. McComb*, 111 N.H. 312, 282 A.2d 673 (1971).

█ The State already has the burden of proving, by a preponderance of the evidence, that a warrantless search was reasonable. *State v. Dearborn*, 114 N.H. 457, 460, 322 A.2d 924, 926 (1974), *citing Lego v. Twomey*, 404 U.S. 477, 489 (1972). In the case of a consensual search, the State must show from all the surrounding circumstances that the consent given was free, knowing, and voluntary. *Schneckloth v. Bustamonte*, 412 U.S. at 226–27; *State v. Laro*, 106 N.H. 500, 503, 213 A.2d 909, 911 (1965); *see State v. Conklin*, 115 N.H. 331, 336, 341 A.2d 770, 775 (1975). The defendant's mental condition and his knowledge of his right to refuse are relevant factors, but neither is determinative. We think it would be a good policy for police officers to advise persons that they have a right to refuse to consent to a warrantless search. A.L.I. MODEL CODE OF PRE–ARRAIGNMENT PROCEDURE 149 (Proposed Official Draft 1975); *Schneckloth v. Bustamonte*, 412 U.S. at 287–89 (Marshall, J., dissenting). That procedure is not, however, presently constitutionally required.

The defendant's remaining contentions are without merit. We review them briefly to preclude future appeals.

I. *Bifurcated Trial.*

The trial court did not err in denying the defendant's motion for a bifurcated trial on the issues of guilt and insanity. Our ruling in *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978), that bifurcation upon request of the defendant is mandatory, is not to be applied retroactively. *See State v. Hayes*, 118 N.H. 458, 389 A.2d 1379 (1978).

II. *Discovery.*

The defendant claims that he "was denied the right to investigatory assistance in the preparation and presentation of his case." The record shows that, on the contrary, the State and the trial court afforded him ample pretrial discovery. The defendant's two pretrial attorneys filed numerous motions, including a motion for mental observation, at county expense, under RSA 135:17, a motion to disclose exculpatory evidence, motions to take depositions of two key prosecution witnesses at State expense, and motions for the production of photographs and physical evidence. The State complied voluntarily with most of these requests to the satisfaction of defense counsel; the remaining motions were granted by the trial court several weeks before trial. In order to allow more time for defense counsel to prepare, the trial court set the trial date a week later than originally scheduled. The State voluntarily permitted defense counsel to review its entire file, and denied knowledge of any other exculpatory evidence. The defendant thus received assistance beyond the minimum that is required by statute or our constitution. *See State v. Healy*, 106 N.H. 308, 210 A.2d 486 (1965); *State v. Superior Court*, 106 N.H. 228, 208 A.2d 832 (1965); *State ex rel. Regan v. Superior Court*, 102 N.H. 224, 153 A.2d 403 (1959).

The defendant also claims that the prosecution failed to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). On review of the record, we find no misconduct by either the prosecutor or the trial court. The defendant's concern is that the prosecutor presented at trial evidence favorable to the State without presenting the related evidence favorable to the defendant. The allegedly exculpatory evidence was fully available to the defendant and his attorneys prior to and during trial. There is no indication that the prosecutor at any time withheld from the defendant information in his possession. *State v. Booton*, 114 N.H. 750, 329 A.2d 376 (1974), *cert. denied*, 421 U.S. 919 (1975). The defendant's vague suspicions that additional exculpatory evidence "is being intentionally concealed" is unsupported.

■ The defendant also claims that he was denied due process because he and his attorney did not obtain a complete transcript of the bail reduction hearing held on May 6, 1977. He alleges that a transcript of the testimony of Lt. Ralph Wilson would have been useful for cross-examining Lt. Wilson at trial. The defendant, through counsel, originally requested a transcript only of his own testimony at the bail hearing. The court granted the motion, the State complied, and counsel indicated that he was satisfied. The remainder of the transcript was not transcribed at all, and was therefore beyond the control of the prosecutor. It was not error for the State to fail to make it available to the defendant. *State v. Booton*, 114 N.H. at 755, 329 A.2d at 381; Annot., 7 A.L.R.3d 8, 142 (1966). The defendant had the opportunity to take Lt. Wilson's deposition at State expense and was not prejudiced by the lack of the transcript.

III. *View.*

■ The defendant claims that the trial court erred in granting the State's motion for a view, because the motion "was obviously calculated to permit the widest possible latitude for speculation" and manipulation of evidence. Even though the scene at the time of trial was not identical in appearance to its condition at the time of the crime, "[w]hether to allow a view is by statute within the 'discretion' of the trial court (RSA 519:21), and its ruling will not be disturbed unless plainly wrong." *State v. Booton*, 114 N.H. at 757, 329 A.2d at 382 (citations omitted). The jury had access to numerous photographs of the scene taken on the day of the assault and could make its own evaluation of any changes.

IV. *Assistance of Counsel.*

The defendant also alleges that he lacked effective assistance of counsel because his attorneys failed to interview some unidentified potential alibi witnesses, conceded too readily that the State had complied with defense requests for pretrial discovery, and failed in other unspecified ways to investigate adequately. The defendant has had contact with at least five court-appointed attorneys since his arraignment, and has found fault with all of them. The first attorney filed a series of pretrial motions on the defendant's behalf. All motions were granted except the one to reduce bail. In May 1977, counsel, at defendant's request, moved to withdraw because the attorney-client relationship was irrevocably broken. The court granted the motion, and immediately appointed a second attorney to represent the defendant. That attorney filed and argued ten additional pretrial motions, represented the defendant at trial, and filed and argued two post-

verdict motions. He then advised the defendant that he did not see any grounds for appeal, and asked to be excused. *See Anders v. California*, 386 U.S. 738 (1967). The defendant elected to file a pro se appeal, all the while protesting that he had not waived his right to the assistance of counsel. The combined efforts of this court and the trial court resulted in the appointment of a competent attorney to represent the defendant on this appeal.

■ The essence of the defendant's complaint is that his attorneys were "ineffective" because they failed to secure his acquittal, a misunderstanding of the constitutional guarantee. *State v. Underwood*, 110 N.H. 413, 414, 270 A.2d 599, 600–01 (1970). We conclude after reviewing the record that the conduct of the defendant's attorneys before and during trial was well " 'within the range of competence required of attorneys representing defendants in criminal cases. ' " *State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971), *quoting Parker v. North Carolina*, 397 U.S. 790, 797–98 (1970).

V. *Sufficiency of Evidence.*

■■ The defendant also alleges that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. The defendant's real complaint is that there were some discrepancies between the testimony of various witnesses, and that the victim's testimony was "controvertible." It is the jury's task to resolve conflicts in testimony. *See State v. Eldridge*, 118 N.H. 665, 392 A.2d 155 (1978). The evidence presented, together with all reasonable inferences in the State's favor, was sufficient to support the jury's conclusion. *State v. Dupuy*, 118 N.H. 848, 395 A.2d 851 (1978). There is no evidence supporting the defendant's suggestions that the alleged kidnapping and assault were feigned or accidental.

*Exceptions overruled.*

BOIS and DOUGLAS, JJ., did not sit; the others concurred.